Gerald OLIVER et al.,

v.

**ROSEBUD SIOUX TRIBE and Ed Driving Hawk, in his official capacity as president of the Rosebud Sioux Tribal Council.**

No. CIV76–3049.

United States District Court, South Dakota.

Jan. 17, 1977.

Mario Gonzalez, Martin, S. D., for plaintiff.

Dennis H. Hill, Rapid City, S. D., for defendant.

MEMORANDUM OPINION

BOGUE, District Judge.

On August 2, 1974, the Rosebud Sioux Tribal Council passed a comprehensive liquor control ordinance regulating the sale and possession of intoxicating beverages on the Rosebud Indian Reservation. Ordinance No. RB74–20. Under this ordinance, an agency of the Rosebud Sioux Tribal government is to be the sole vendor of alcoholic beverages on the Rosebud Reservation. RB74–20, Chapter I, §§ 14, 16. The only exception to this Tribal monopoly is found in Chapter II of RB74–20, which allowed each of the several communities on the Rosebud Indian Reservation to acquire the right to sell low-point beer. In order for any community to acquire that right, that community must have had an election for the purpose of approving the sale of low-point beer before August 2, 1975. RB–74, Chapter II, § 4. In the absence of such a timely election, the ordinance provides

that the right to sell beer would reside exclusively in the Tribal government. *Id.* It may be noted at this point that RB74–20 could be amended or repealed only by a three-fourths vote of the Tribal Council sitting in regular session. RB74–20, Chapter VII, § 4.

On January 29, 1976, the community of Rosebud (one of several communities on the Rosebud Indian Reservation) held an election on the question whether it should be permitted to sell low-point beer as a community. The question was answered by the community electorate in the affirmative, and the Rosebud Community certified the results and passed a resolution urging the Tribal Council to issue it a permanent license for the purpose of selling beer.

On March 10, 1976, the Tribal Council by a vote of thirteen to eight resolved that a beer license should issue to the Rosebud Community. Resolution No. RST76–32. RB74–20 requires, however, that only the Rosebud Sioux Liquor Control Commission may issue liquor licenses. RB74–20, Chapter I, § 12(7). This Commission has yet to be appointed by the Tribal Council.

The Rosebud Community has made several requests of the Tribal Council to appoint a Liquor Control Commission and issue a beer license to the Rosebud Community. The Tribal Council has discussed the matter on at least three occasions, and finally decided to table the request indefinitely. Plaintiffs have sought no relief in Tribal Court, *cf. O'Neal v. Cheyenne River Sioux Tribe,* 482 F.2d 1140, 1146 (8th Cir. 1973), and have steadfastly urged that full exhaustion of Tribal remedies would be futile in this case. Plaintiffs commenced this action on August 25, 1976 seeking: a declaratory judgment that their civil rights have been violated; and injunctive relief preventing Defendants from allowing liquor to be sold on the Rosebud Reservation in violation of the Tribe's liquor control ordinance and further injunctive relief requiring Defendants to appoint a Rosebud Sioux Liquor Control Commission to enable Plaintiffs to apply for a beer license from that body. An application for a Temporary Restraining Order restraining the temporary sale of beer at a weekend fair and rodeo was denied by this Court August 26, 1976. The matter came on for hearing before this Court on September 28, 1976. That hearing constituted the trial of this matter on the merits, since the hearings on both the preliminary and permanent injunctions were consolidated, together with the hearing on a Motion to Dismiss filed by the Defendants.

Plaintiffs' allegations can be generally summarized as follows: 1) Resolution No. RST76–32 (whereby the Tribal Council by a 13–8 vote resolved that a beer license should issue to the Rosebud community) is in effect a *de facto* amendment to the comprehensive liquor ordinance RB74–20 which deletes the requirement that community option elections be held by August 2, 1975; 2) Resolution No. RST76–32 constitutes an implied waiver of the community's failure to have a timely election and thus validates the election; and 3) because other communities have received temporary permits to sell beer at fairs and celebrations, the denial of Plaintiffs' request for a permanent beer license constitutes a deprivation of Plaintiffs' right to equal protection of Tribal laws.

Initially, this Court finds that Plaintiffs have effectively exhausted their Tribal administrative remedies.

Plaintiffs contend that exhaustion of Tribal judicial remedies would be futile for five reasons: 1) the present Tribal administration has set up a Criminal Justice Commission which is apparently empowered to hire and fire tribal judges in contravention of the Rosebud Sioux Revised Law and Order Code; 2) the present Tribal Chief Judge allegedly conducted a trial in a manner adverse to the rights of one of the Plaintiffs' relatives; 3) the present Tribal Chief Judge is a member of the Criminal Justice Commission referred to above; 4) the current Tribal executive officer unsuccessfully attempted to influence one judicial decision (although it is unclear to what degree and in what manner this attempt was made); and 5) the Tribal Council is immune from suit.

██ Since Plaintiffs have not requested a waiver of sovereign immunity, the possible existence of Tribal Council immunity from suit does not preclude a requirement of exhaustion. *O'Neal v. Cheyenne River Sioux Tribe,* 482 F.2d 1140, 1146 (8th Cir. 1973). In this context, it should be noted that §§ 35 and 36 of Chapter I, Ordinance No. RB74–20 expressly provide for Tribal judicial review of a liquor license revocation.

██ The existence of the Tribal Criminal Justice Commission, and its alleged *ultra vires* use of power with respect to the hiring and firing of Tribal Judges, at most demonstrates that the Tribal Court is in somewhat of a disordered state. It does not, however, establish that the Tribal Judiciary is so biased that Plaintiffs cannot receive a fair hearing. Plaintiffs note that the Criminal Justice Commission is composed of several non-members of the Rosebud Sioux Tribe and is headed by Manley Night Pipe. Plaintiffs' Opening Brief at page 7. Nothing in the record shows any link between the Commission and the Rosebud Sioux Tribal government of such a nature as to permit a Tribal government effort to pack the Court with Judges who would be biased, either in favor of the Tribal Council or against these Plaintiffs.

Further, the fact that the present Tribal Chief Judge is also a member of the Criminal Justice Commission appears insignificant, and does not establish that the Tribal Judiciary lacks sufficient judgment to give Plaintiffs a fair hearing.

██ Plaintiffs further contend that, since the Chief Tribal Judge has allegedly conducted a trial in a manner adverse to the rights of one of the three named Plaintiffs' relatives, the Tribal judiciary is biased against them. However, adverse rulings do not constitute or even demonstrate judicial bias. *United States v. Beneke,* 449 F.2d 1259 (8th Cir. 1971); *United States v. Anderson,* 433 F.2d 856 (8th Cir. 1970).

Finally, the fact that the current Tribal President attempted, in some vague manner, to influence a judicial decision does not establish that exhaustion of Tribal remedies would be futile in this case. First, the attempt was unsuccessful. Second, despite the lack of success, it is interesting to note that the Judge whom the President attempted to influence is the only one of the original judges remaining after the Criminal Justice Commission's actions in firing other Tribal Judges. Thus there is hardly a showing of any continuing influence by the Tribal Administration over the Tribal Judiciary.

In short, there is insufficient factual basis for the claim that exhaustion would be futile because the Tribal Judiciary is subservient to the Tribal government. In the absence of such a factual basis, the presumption that tribal judges act independently must be invoked. *O'Neal v. Cheyenne River Sioux Tribe,* 482 F.2d 1140, 1147 (8th Cir. 1973).

*O'Neal, supra,* establishes that each case requires

> . . . a balancing of the merits of exhaustion against the harm an exhaustion requirement might threaten with regard to those who claim their constitutional rights have been violated. 482 F.2d at 1148.

Apart from the lack of a factual basis for a conclusion that exhaustion should not be required, other factors present in this case compel the conclusion that exhaustion is particularly appropriate in this case. These factors are invoked under the balancing test stressed in *O'Neal.* Under the first part of the test, the merits of exhaustion, this Court concludes that the questions presented in this case are best suited to resolution by Tribal tribunals. Initially, it is clear from the record that the Rosebud Sioux Tribal Council is entertaining serious doubts about whether to allow the sale of liquor on the Rosebud Reservation on anything other than a temporary basis in connection with fairs or celebrations. Certainly any decision in this case must at least consider its impact on this broad issue. Secondly, constructions of Tribal law are an integral part of Plaintiffs' claims. For ex-

**490**

ample, one of their primary contentions concerns whether a Tribal Council resolution may amend an ordinance, especially in view of the fact that the Tribal resolution in question did not meet the formal requirements for amending Ordinance No. RB74–20 (three-fourths vote). Questions of this nature should, in the absence of exceptional circumstances not presented here, be presented to the Tribal Court.

With respect to the other part of the *O'Neal* balancing test, *i.e.* the harm which might result from exhaustion, this Court can discern no prejudice to Plaintiffs by requiring exhaustion. Indeed, although this Court has not developed an opinion as to the merits of Plaintiffs' claims, it is by no means clear that Plaintiffs have suffered a deprivation of any federally protected right. In such a situation, it would seem to be to Plaintiffs' advantage to have their claims tested in Tribal Court under Tribal laws.

For the foregoing reasons, the complaint in the above-entitled matter will be dismissed without prejudice for failure to exhaust Tribal remedies. The foregoing shall constitute this Court's findings of fact and conclusions of law.